J-S13044-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: J.R.L., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.L. AND M.L. | : | No. 1630 WDA 2017 |

Appeal from the Order Dated September 28, 2017
in the Court of Common Pleas of Mercer County,
Orphans' Court at No(s):  No: 2017-217A

BEFORE:  GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED MAY 25, 2018

S.L. and M.L. ("Appellants") appeal the Order denying their Petition to involuntarily terminate the parental rights of D.L. ("Mother") to her son, J.R.L. ("Child"), so that Appellants may adopt him.[1]  We vacate and remand.

The trial court set forth the factual background and procedural history of this appeal as follows:

On September [  ], 2011, Mother gave birth to [Child] while incarcerated in Cambridge Springs State Correctional Institution. Rather than placing [Child] in the foster care system, Mother entrusted [Child] to [Appellants'[2]] care until her release, through

_____

[1] Child's father is unknown.  Notice of the termination proceedings was published, but no man has come forth as Child's father, and the father is listed as "the unknown father."  Thus, Child's father is not a party to this appeal.

[2] Cambridge Springs State Correctional Institution runs a program that allows incarcerated pregnant mothers to place their child with an Amish family while in prison.  As part of the placement, mothers sign a power of attorney granting the Amish families physical custody of child on a temporary basis until the mother is released from prison.  In this case, Appellants, an Amish couple, took part in the program and exercised physical custody of Child.

the use of a program at the correctional facility and a power of attorney. Mother's incarceration ended in 2013, and [Appellants] relinquished [Child] back into Mother's custody. Some time later, Mother was again incarcerated, and [Child] was cared for by Mother's parents. While the exact date is disputed, it is undisputed that Mother's family returned [Child] to [Appellants] during Mother's second period of incarceration. No new power of attorney was executed. [Child] has remained with [Appellants] since that time. According to Mother, she attempted to contact [Child] during her second incarceration. On April 20, 2017, [Appellants] filed [an] action to terminate Mother's parental rights and adopt [Child] themselves. At that time, Mother was incarcerated, but[,] on April 26, 2017, Mother was released. She immediately attempted to retrieve [Child] from [Appellants]. However, they would not relinquish custody of [Child] to her.

Trial Court Opinion, 11/16/17, at 1-2 (footnote added).

On September 28, 2017, the trial court held an evidentiary hearing on the termination Petition.[3] At the hearing, Appellants were present and represented by counsel. Mother, pro se, was present via telephone. Notably, Child was not present and the trial court did not appoint legal counsel or a guardian ad litem on behalf of Child.

After hearing evidence, the trial court entered the Order denying the

_____

[3] The hearing was continued on several occasions because of issues regarding notice to Mother and the unknown father of Child.

Petition on September 28, 2017.[4]  Attorney Nicholas R. Sabatine, III, entered his appearance as counsel for Mother on October 3, 2017.[5]  The trial court did not appoint counsel for Child or a guardian ad litem with regard to the appeal.

On October 27, 2017, Appellants filed a timely Notice of Appeal, and a Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Appellants raise the following questions for our review:

1.    Did the trial court err in failing to appoint counsel to [Child] in a contested adoption?

2.    Did the trial court err in determining that Appellants did not have standing to file for involuntary termination of parental rights?

3.    Did the trial court err in failing to perform fact[-]finding?

4.    Did the trial court err in failing to take the welfare of [C]hild into consideration?

Brief for Appellants at 2 (numbers added, issues reordered).

_____

[4] The trial court did not provide an explanation for its decision in its Order denying the termination Petition, nor did it accompany the Order with an opinion.  Nevertheless, in its Pa.R.A.P. 1925(a) Opinion, the trial court determined that because Mother temporarily entrusted Child to Appellants and did not consent to permanent placement of Child with Appellants, the Appellants did not have an in loco parentis relationship with Child and thus, lacked standing to terminate Mother's parental rights.  See Trial Court Opinion, 11/16/17, at 2-4.

[5] Mother has not sought to proceed in forma pauperis, nor has she requested the appointment of counsel.  Rather, she retained private counsel for this appeal.

Appellants initially contend that the trial court erred in failing to appoint Child counsel pursuant to 23 Pa.C.S.A. § 2313(a). Id. at 9. Appellants point out that the trial court acknowledged this failure in its Rule 1925(a) Opinion. Id.

Under 23 Pa.C.S.A. § 2313(a), a child has a statutory right to counsel in a contested involuntary termination of parental rights proceeding:

> (a) Child.--The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a). A "proceeding" is defined as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." BLACK'S LAW DICTIONARY 1241 (8th ed. 2004); see also 23 Pa.C.S.A. § 5402 (defining "[c]hild custody proceeding" as "[a] proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. The term includes a proceeding for ... termination of parental rights ....").

In a plurality decision, our Supreme Court held that under 23 Pa.C.S.A. § 2313(a), courts must appoint counsel to represent the legal interest of a child in a contested involuntary termination proceeding. In re Adoption of L.B.M., 161 A.3d 172, 179-80 (Pa. 2017). Three members of the Court held that a child's legal interests cannot be represented by his or her guardian ad

- 4 -

litem and requires the appointment of separate counsel. Id. at 180-82; see also id. at 174 (noting that a child's best interests are distinct from his/her legal interests). However, the majority of the Court concluded that counsel may serve both as the guardian ad litem, representing the child's best interests, and as the child's counsel, representing the child's legal interests, as long as there is no conflict between the child's legal and best interests. Id. at 183-93; see also In re D.L.B., 166 A.3d 322, 329 (Pa. Super. 2017) (stating that "separate representation would be required only if the child's best interest and legal interests were somehow in conflict.").

Recently, this Court held that the failure to appoint legal counsel to a child in a contested involuntary termination of parental rights proceeding is structural error. See In re K.J.H., 180 A.3d 411, 413 (Pa. Super. 2018); see also id. (stating that "[a] structural error is defined as one that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself.") (citation omitted). As a result, where the termination proceeding is contested, the issue of the failure to appoint counsel for child may be raised sua sponte, and the case must be remanded for appointment of counsel. See id. at 413-14; accord In re Adoption of T.M.L.M., 2018 PA Super 87, *2 (Pa. Super. 2018).

Here, Mother contested Appellants' Petition to terminate her parental rights. Thus, the trial court was mandated to appoint Child counsel. See In re Adoption of T.M.L.M., 2018 PA Super 87 at *2 (noting that

"[a]ppointment of counsel representing the child is mandatory, and failure to do so is legal error."); In re Adoption of G.K.T., 75 A.3d 521, 527 (Pa. Super. 2013) (stating that the court "committed reversible error in failing to appoint a counsel for the [c]hild as required by section 2313(a)."); see also Trial Court Opinion, 11/16/17, at 4 (recognizing that the trial court did not appoint Child counsel). While the trial court ultimately denied the termination Petition based upon Appellants' lack of standing, the statute and L.B.M. clearly state that counsel must be appointed in an involuntary termination proceeding. Thus, the obligation to appoint child counsel under section 2313(a) is triggered when a termination petition is filed and a parent has contested the petition. We cannot consider the trial court's final determination where it would circumvent this mandate. See, e.g., In re K.J.H., 180 A.3d at 413-14 (stating that the failure to appoint counsel to the child pursuant to section 2313(a) was a structural error and required remand for appointment of counsel, despite the fact that grandparents' petition to terminate mother's parental rights had been denied); In re Adoption of G.K.T., 75 A.3d at 527-28 (concluding that failure to appoint the child counsel under section 2313(a) required reversal of order granting adoptive couple's petition to terminate father's parental rights). Based upon this legal error, we are constrained to vacate the Order on appeal, and remand the matter to the trial court for further proceedings, prior to which the court shall appoint legal counsel to represent Child and a separate guardian ad litem to represent Child's best

interests, if it is determined to be necessary by the trial court. See L.B.M., 161 A.3d at 183-93; In re D.L.B., 166 A.3d at 329.[6, 7]

Order vacated; case remanded for further proceedings consistent with this Memorandum, with instructions that the trial court shall appoint legal counsel to represent Child, and a separate guardian ad litem to represent Child's best interests, if necessary, to review the matter and participate in any new termination hearing. Jurisdiction relinquished.

_____

[6] We note that in In re Adoption of T.M.L.M., this Court, after determining that a child was deprived of his statutory right to counsel, stated the following:

> Upon remand, the court shall appoint separate counsel for [c]hild to represent his legal interests. After review of the prior proceedings and appropriate consultation with [c]hild, [c]hild's legal-interests counsel shall notify the orphans' court whether the result of the prior proceedings is consistent with [c]hild's legal interests or whether counsel believes a new hearing is necessary to provide counsel an opportunity to advocate on [c]hild's behalf. The orphans' court shall conduct a new hearing only if it serves the "substantive purpose" of providing [c]hild with an opportunity to advance his legal interests through his new counsel.

In re Adoption of T.M.L.M., 2018 PA Super 87 at *4 (footnotes omitted). The Court further concluded that if a new hearing is not held, the trial court could reenter its original order. Id. at *5. Based upon this precedent, upon remand, the trial court shall appoint Child counsel to represent his legal and best interests. Counsel will then have the opportunity to review the prior proceedings and notify the trial court as to whether new proceedings are required. If the trial court decides a new hearing is not required, it is free to reenter its original Order. See id.

[7] Based upon our disposition, we need not address Appellants' remaining claims.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/25/2018