J-A22038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.C.F., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.F., SR. AND J.F., | : | |
| PARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1217 EDA 2019 |

Appeal from the Order Entered April 2, 2019
In the Court of Common Pleas of Pike County Civil Division at No(s):  No. 2-2018 OA

BEFORE:  MURRAY, J., STRASSBURGER, J.[*], and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED OCTOBER 08, 2019**

S.F., Sr. (Father) and J.F (Mother) (collectively, Parents) appeal from the order of the Court of Common Pleas of Pike County (trial court) involuntarily terminating their parental rights to S.C.F., Jr. (Child).  We vacate and remand.

Because of our disposition, we need not recite all of the facts adduced at the involuntary termination of parental rights hearing (TPR).  However, we provide the following pertinent facts and procedural history from the trial court's April 2, 2019 order and our independent review of the certified record to provide some context for the reader.  Child was born in November 2012 and was six years old at the time of the subject proceeding.  On August 20,

_____

[*] Retired Senior Judge assigned to the Superior Court.

2013, Mother executed a consensual legal guardianship agreement with C.F. (Maternal Grandfather) and D.F. (Maternal Grandmother) (collectively, Maternal Grandparents).  In a handwritten document dated September 9, 2013, Mother requested that Maternal Grandparents assume full custody of Child.  Father did not endorse or consent to any documents that gave custody or guardianship to Maternal Grandparents.

On the March 28, 2013 recommendation of a custody hearing officer, the trial court entered an order granting primary physical custody to Maternal Grandparents, shared legal custody to Parents and Maternal Grandparents, and periods of supervised visitation for Parents as agreed upon by the parties. On February 16, 2018, Maternal Grandparents filed a Petition for Involuntary Termination of Parental Rights of Father and Mother to Child and a Petition for Adoption of Child.

On April 2, 2019, after a TPR hearing, the trial court entered an order terminating the parental rights of Mother and Father, finding that the totality of the evidence established that they evidenced a strong and settled purpose of relinquishing their parental rights or failed or refused to perform their parental duties.  Mother and Father timely appealed.  They and the trial court complied with Rule 1925.  *See* Pa.R.A.P. 1925.

On appeal, Mother and Father argue that the trial court erred and abused its discretion by failing to appoint counsel for Child pursuant to Section

2313(a) of the Adoption Act[1] and in involuntarily terminating their parental rights.[2]

We address the issue of the trial court's failure to appoint counsel first. Section 2313 of the Adoption Act provides, in pertinent part, that "[t]he court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents." 23 Pa.C.S. § 2313(a). Based on this clear and unambiguous language, our appellate courts have found that the appointment of counsel representing the child is mandatory, and failure to do so is legal error. *See In re K.J.H.*, 180 A.3d 411, 413-14 (Pa. Super. 2018) (concluding 23 Pa.C.S.A. § 2313(a) mandated orphans' court to appoint counsel for child in contested involuntary termination of parental rights proceeding and committed an error of law by failing to do so); *see also In re Adoption of N.A.G.*, 471 A.2d 871, 874-75 (Pa. Super. 1984) (observing Section 2313(a)

---

[1] Mother and Father did not raise this issue with the trial court and, generally, this would result in waiver. *See* Pa.R.A.P. 302(a). However, because the statutory right found in Section 2313(a) belongs to Child and not Mother and Father, they cannot waive it on his behalf. *See In re T.S.*, 192 A.3d 1080, 1087 (Pa. 2018), *cert. denied*, 139 S.Ct. 1187 (2019).

[2] "The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *Interest of M.V.*, 203 A.3d 1104, 1111 (Pa. Super. 2019) (citation omitted). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted).

creates a statutory mandate that court appoint counsel for a child who owes loyalty exclusively to him or her to actively advance his or her needs and welfare).

Here, it is undisputed that the trial court failed to appoint counsel for Child. Therefore, it erred as a matter of law. While acknowledging that the trial court erred, Grandparents suggest that the error was harmless under the circumstances. (**See** Grandparents' Brief, at 2). We are not legally persuaded by this suggestion, however, because the failure to appoint counsel is a structural error. As this court recently observed:

> A structural error is defined as one that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. Structural errors are not subject to harmless error analysis. Generally, denial of counsel is a structural error; although such error usually stems from deprivation of a constitutional right to counsel. Here, by contrast, the right to counsel is statutory. Nonetheless, we do not find that distinction to be determinative. The same concerns are evident regardless of the derivation of the right. Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.

*In re Adoption of K.J.H.*, *supra* at 413 (brackets, internal citation, and footnote omitted) (addressing failure to appoint counsel in termination of parental rights proceeding *sua sponte*) (citing *In re L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (Opinion announcing judgment of the Court with five Justices joining this section) (holding that failure to appoint counsel for child in

contested TPR proceeding is structural error not subject to harmless error analysis)).[3]

In spite of the foregoing, Grandparents argue that "[t]he Supreme Court in *In re T.S.*, [*supra*], stated that the lack of a guardian *ad litem* for the subject minor child is non waivable but that the harmless error standard is to be used." (Grandparents' Brief, at 2). This argument fails. First, Grandparents confuse the role of a guardian *ad litem*, who may or may not be an attorney and whom a court appoints to represent a child's best interests with that of an attorney appointed pursuant to Section 2313(a), who represents a child's legal interests (preference). Second, Grandparents misinterpret *In re T.S.*, which actually supports the theory that the failure to appoint counsel is a structural error that is not subject to harmless error analysis and merely reaffirms the principle that where a child is too young to express a preference in a contested involuntary termination hearing, an attorney-GAL can fulfill the role of Section 2313(a) counsel.

Specifically, in *In re T.S.*, the subject children were too young to express a preference as to the involuntary termination proceeding's outcome, and, although they had an attorney-GAL to represent their best interests, the court did not appoint a separate attorney to represent their legal interests

---

[3] Because we are remanding for a new proceeding, we need not reach the issue of whether the trial court properly terminated the parental rights of Mother and Father.

pursuant to Section 2313(a). *See In re T.S.*, *supra* at 1092. On appeal, Mother argued that this was structural error and not subject to harmless error analysis, requiring a remand for the appointment of counsel. *See id.*

In reviewing this argument, the Pennsylvania Supreme Court observed first that, "[t]o the extent Mother indicates that structural error is not subject to harmless error analysis, by definition she is correct. However, structural error cannot arise unless the trial court erred." *Id.* It continued, "[w]e have determined an attorney-GAL who is present and representing a child's best interests can properly fulfill the role of Section 2313(a) counsel where, as here, the child at issue is too young to be able to express a preference as to the outcome of the proceedings." *Id.* Thus, the Court concluded that "the trial court did not err in allowing [] the children's guardian *ad litem*, to act as the sole representative for [them]." *Id.*

Therefore, contrary to Grandparents' assertion, *In re T.S.* did not apply the harmless error analysis to the facts before it or state that the harmless error doctrine should be applied under any other circumstances.[4] Additionally, in this case, not only was Child six years old at the time of the hearing and may have been able to express his preference, he did not have either a guardian *ad litem* or an attorney pursuant to Section 2313(a). Therefore, the

---

[4] Although the dissent in *In re T.S.* characterizes the Majority's holding as a "harmless error approach," the decision does not endorse a harmless error analysis and merely reaffirms the exception detailed above. *In re T.S.*, *supra* at 1104 (Wecht, J., dissenting).

trial court committed a structural error when it failed to appoint Section 2313(a) counsel for Child.

Accordingly, we vacate the order of the trial court and remand for the appointment of counsel to represent Child's legal interests at a new involuntary termination proceeding.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/19